# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                     )
                                           )          **JUDGE RICHARD L. SPEER**
Michael/Tracey Jacob                       )
                                           )          Case No. 09-36028
    Debtor(s)                         )
                                           )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity and finds, for the reasons set forth herein, that the Motion of the United States Trustee should be Granted.

## BACKGROUND

On September 1, 2009, the Debtors, Michael and Tracey Jacob, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). A Chapter 7 bankruptcy contrasts with other types of relief available under the Bankruptcy Code, such as that set forth in Chapter 13, in which a debtor develops a plan of reorganization to repay all or a portion of their debts.

However, no matter the type of bankruptcy relief sought, it is well-established that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *U.S. v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Bankruptcy is, instead, a legislatively created benefit that Congress may

In re: Michael/Tracey Jacob
Case No. 09-36028

withhold at its discretion. To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed. *In re AC Rentals, Inc.*, 325 B.R. 339 (Table) (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707.

For its Motion to Dismiss the Debtors' Chapter 7 case, the UST relies on two provisions set forth in § 707: § 707(b)(1) and § 707(b)(3). These provisions operate in a hierarchical fashion, with § 707(b)(1) first setting forth the foundational requirement, providing for the dismissal of case when abuse is found to exist, and then § 707(b)(3) providing a methodology by which to assess the existence of abuse under § 707(b)(1). In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

The grant of authority for a court to dismiss a debtor's case under § 707(b) represents a core Congressional policy toward the Bankruptcy Code: that debtors with an ability to repay their debts should not be able to use Chapter 7 to escape their liabilities, but instead should be required to pay, from their postpetition income, all or a portion of their debts. *In re Skvorecz*, 369 B.R. 638, 642-43 (Bankr. D.Colo. 2007).

Page 2

In re: Michael/Tracey Jacob
Case No. 09-36028

To that end, the United States Trustee, in seeking to have the Debtors' bankruptcy case dismissed in accordance with § 707(b)(1) and § 707(b)(3), relied heavily on what it perceived as the Debtors' ability to repay their unsecured creditors. As taken from the Motion: "Because the Debtors are not needy and are capable of paying back their creditors a portion of their debt with the adjustments suggested by the United States Trustee, they should not receive the benefit of a discharge." (Doc. No. 14, at pg. 5). The facts giving rise to this position are largely undisputed.

## FACTS

The Debtors, Michael and Tracey Jacob (hereinafter the "Debtors"), are married and have three young children. The two eldest of the Debtors' children have been diagnosed as having "special educational needs." The condition of the Debtors' youngest child has yet to be determined. One of the Debtors' children also has a physical condition which often necessitates that the child receive dental care.

Mr. Jacob is employed as an artist with an advertising agency; Mrs. Jacob disclosed that she is employed as a Human Resource Manager for a local automotive company. Mr. Jacob has been with his current employer for 15 years; Mrs. Jacob has been with her current employer for two years. As a condition of her employment, Mrs. Jacob is currently furthering her education, a requirement that will take approximately three years to complete and will, in the near future, necessitate a monthly expenditure of just under $600.00.

From his employment, Mr. Jacob earns a gross monthly salary of $5,734.00, amounting to $68,808.00 annually. In addition, Mr. Jacob regularly receives year-end bonuses from his employer. Although bonuses are not guaranteed, and can vary from year-to-year, for the most recent year, 2009, Mr. Jacob received a bonus of $25,000.00.

Page 3

In re: Michael/Tracey Jacob
Case No. 09-36028

From her employment, Mrs. Jacob earns a gross monthly salary of $6,677.67, or $80,132.04 annually. Resultantly, excluding any bonuses received by Mr. Jacob, the Debtors together have an annual earned income of $148,940.04. From this income, the Debtors reported $3,780.83 in monthly payroll deductions, including these two monthly deductions taken by Mr. Jacob: (1) $500.00 to repay a 401(k) loan; and (2) a $50.00 monthly contribution to a 401(k) account. After accounting for their payroll deductions, the Debtors represented a net monthly income of $8,630.84.

Against their income, the Debtors claimed $8,633.00 in necessary, monthly expenses, thus resulting in a slight shortfall, ($2.16), in the Debtors' monthly budget. The Debtors' budgeted expenses included, but were not limited to the following itemized expenditures:

$3,741.00 for housing which included two mortgage payments and a monthly allocation for taxes and insurance;

$400.00 Electricity and Heating Fuel

$175.00 Telephone

$1,000.00 food;

$285.00 medical/dental care

$210.00 clothing;

$1,625.00 for child care.

Two other matters brought to Court's attention are also relevant to the Debtors' household budget. First, based upon the lack of any liens, the Debtors do not currently make any periodic payments to maintain their two automobiles, a 2002 For Explorer; and a 1993 Audi. Second, the Debtors reported that, as the result of net tax overpayments, they have received and will likely continue to receive annual tax refunds of approximately $3,400.00. *See In re Gonzalez*, 378 B.R. 168, 175-76

Page 4

In re: Michael/Tracey Jacob
Case No. 09-36028

(Bankr. N.D.Ohio 2007). (the overpayment of a tax liability constitutes income for purposes of § 707(b)(3) so long as it appears that the debtor is continuing to overpay his or her taxes).

At the time they filed their petition for relief, the Debtors represented that they were insolvent, reporting assets of $381,101.00, versus liabilities of $488,837.73. The Debtors' most significant asset, in terms of value, is their residence which they valued at $302,000.00. This residence was purchased by the Debtors in 2004 for $305,000.00. Other assets of significance held by the Debtors included: household furniture valued at $20,000.00; a 401(k) account held by Mr. Jacobs with an assessed worth of $50,000.00; and their two automobiles, worth collectively $5,500.00.

For their liabilities, the Debtors reported secured debt in the amount of $330,402.54. Primarily, this represented the two mortgages encumbering their residence which, in the aggregate, totaled $316,403.00. The Debtors have represented that they intend to reaffirm on these obligations. The Debtors' unsecured liability totals $158,435.19, and is comprised almost entirely of credit-card debt. Of this credit-card debt, approximately half was incurred by the Debtors after they purchased their home in 2004.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter the "UST") to Dismiss the Debtors' bankruptcy case pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). And as a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

Page 5

In re: Michael/Tracey Jacob
Case No. 09-36028

In opposition to the Motion of the UST to Dismiss, the Debtors raised an initial matter of procedure. According to the Debtors, the Motion brought by the UST to Dismiss is untimely because it was filed outside the time limit set forth in 11 U.S.C. § 704(b). Under this provision, an affirmative duty is imposed on the UST to "review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b)[.]"

The record of this case shows that, as a factual matter, the Debtors are correct in their assertion that the UST filed its Motion to Dismiss outside the time limit prescribed in § 704(b). The meeting of creditors was held on November 4, 2009. (Doc. No. 10). But, the UST did not file its Motion to Dismiss until December 21, 2009, well outside the 10-day time limit set forth in § 704(b). (Doc. No. 14). Notwithstanding, as a legal matter, the Debtors' argument fails.

By its strict terms, § 704(b) only applies when the UST brings an action to dismiss a case based upon "presumed abuse" under § 707(b). The conditions giving rise to a presumption of abuse are set forth in § 707(b)(2) which, in relevant part, provides that "[i]n considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall *presume abuse exists* if . . . ." (emphasis added). In this matter, however, the UST seeks to have the Debtors' case dismissed in accordance with the 'totality of the circumstances' test of § 707(b)(3), and not the 'presumed abuse' formula of § 707(b)(2). Accordingly, the time limit prescribed in § 704(b) is not applicable, and thus, the Court now turns to address the merits of the action brought by the UST to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3).

In an action brought to dismiss a case under § 707(b)(1) and § 707(b)(3), the burden of proof is on the moving party to establish that the requisite grounds for dismissal have been established. Such a burden must be carried by a preponderance of the evidence. But, once a *prima facie* case is

Page 6

In re: Michael/Tracey Jacob
Case No. 09-36028

established by the movant, the burden of going forward with sufficient evidence to controvert the *prima facie* case is reposed on the debtor. *In re Perelman*, 419 B.R. 168, 177-78 (Bankr. E.D.N.Y. 2009).

For its burden, the UST takes the position that, as set forth in § 707(b)(3)(B), the totality of the circumstances of the Debtors' financial situation demonstrates abuse. According to the UST, this situation exists because the Debtors have the ability to repay at least a portion of their debts.

As stated earlier, it has been Congressional policy toward the Bankruptcy Code to encourage debtors to repay their debts. *See, e.g., In re Copper*, 426 F.3d 810, 814 (6th Cir. 2005) (observing that the rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts). It has also been Congressional policy to limit bankruptcy relief to only those debtors truly in "need" of such relief. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). Consistent with these policies, a debtor's ability to repay their unsecured debts has developed to become a prime, and often dispositive consideration when determining whether, under the 'totality of the circumstances' standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Masella*, 373 B.R. 514, 518 (Bankr. N.D.Ohio 2007). As observed by the Sixth Circuit Court of Appeals: dismissal for "abuse is intended to uphold creditors' interests in obtaining repayment where such repayment would not be a burden." *In re Krohn*, 886 F.2d at 126 (6th Cir. 1989) (internal quotations omitted), *citing In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir.2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id.,citing* 11 U.S.C. § 1325(b)(2). This assessment, as to the amount of "disposable income" available to a debtor, is made exclusively by the court, and

Page 7

In re: Michael/Tracey Jacob
Case No. 09-36028

is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

Operating under this definition of 'disposable income,' three of the deductions taken by the Debtors against their income must be deemed as either unnecessary or excessive. First, in the form of both a loan and a contribution, Mr. Jacob has allotted from the Debtors' monthly budget the sum of $550.00 per month toward his 401(k) account. However, as this Court has repeatedly held:

> Loan repayments to retirement accounts are considered 'disposable income' because of their unique character; the debtor is, in essence, repaying a loan to himself. Thus, . . . it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

*In re Brenneman*, 397 B.R. 866, 872 (Bankr. N.D.Ohio 2008), citing *In re Gonzalez*, 378 B.R. at 174. Similarly, for the same reason, the Court has not generally permitted debtors to expense against their 'disposable income,' contributions made to retirement accounts. *See, e.g., In re Kunkelman*, 417 B.R. 489, 493-94 (Bankr. N.D.Ohio 2009); *In re Ramlow*, 417 B.R. 479, 483 (Bankr. N.D.Ohio 2009).

To be sure, the prohibition on expensing allotments made to retirement accounts is not absolute. Section 707(b)(3)(B), being a totality of the circumstances test, must be necessarily fluid so as to take into account all factors of relevance. *In re Felske*, 385 B.R. 649 (Bankr.N.D.Ohio 2008). Hence, an individual's particular circumstances, such as the imminent advance of retirement combined with minimal savings, could warrant permitting a debtor to expense against their "disposable income" payments being made to retirement accounts. The circumstances of this case, however, cannot be said to reach such a level. Neither of the Debtors is near retirement age. Moreover, Mr. Jacob represented that he presently maintains approximately $50,000.00 in an exempt 401(k) account.

Page 8

In re: Michael/Tracey Jacob
Case No. 09-36028

Within the "disposable income" framework, the Court also finds the Debtors' monthly allocation for housing to be excessive. Exclusive of utilities, the Debtors presently devote $3,741.00 per month to maintain their residence, a residence which the Debtors acknowledge is located in an upscale area. This amount is almost four times the $901.00[1] housing allowance allowed under the 'means test' formula of § 707(b)(2) which, although not dispositive of the issue, serves as a useful guideline when assessing the reasonable necessity of a debtor's expenditure. *In re Durczynski*, 405 B.R. 880, 884 (Bankr. N.D.Ohio 2009); *In re Violanti*, 397 B.R. 852, 858 (Bankr. N.D.Ohio 2008).

The Debtors' allocation of $175.00 per month for phone service also appears to be measurably high. In this way, as with other like expenses, such as that for cable television, a debtor's creditors should also not be expected to pay for more than basic phone service – *e.g.*, generally cell phone service for things such as texting as well as nonessential calls are not permissible. Other aspects of the Debtors' financial situation also show that their assessment of a slight shortfall ($2.16) each month in their household budget does not present an accurate picture of their financial situation.

When assessing a debtor's 'disposable income,' all sources from which a debtor derives income must be considered. *See In re Calhoun*, 396 B.R. 270, 276 (Bankr. D.S.C. 2008) (including debtors' social security income in a § 707(b)(3) analysis). In this matter, the Debtors have two significant sources of income not included in their monthly budgetary figures.

First, the Debtors have traditionally received, and acknowledged that they are likely to continue receiving, tax refunds of approximately $3,400.00, averaging approximately $280.00 per month. On a forward going basis, since they are likely to receive similar refunds in the future, this financial resource must be considered when assessing the amount of 'disposable income' available to the Debtors. As this Court previously explained:

---

[1] http://www.justice.gov/ust/eo/bapcpa/20090315/bci_data/housing_charts/irs_housing_charts_OH.htm

Page 9

In re: Michael/Tracey Jacob
Case No. 09-36028

> Tax refunds arise as the result of a taxpayer's overpayment of their tax liability. Therefore, tax refunds, although not available on a monthly basis, are a source of income for a debtor and so long as there is the realistic prospect of similar refunds in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of § 707(b).

*Id.* at 885.

Mr. Jacob also acknowledged that he stands a reasonable chance of receiving bonuses in the future. Thus, just as with their anticipated tax refunds, the Debtors' 'disposable income' must be assessed with due regard for Mr. Jacob receiving year-end bonuses. Although as the bonuses are not guaranteed, and can fluctuate year-to-year, an exact figure cannot be placed on the amount future year-end bonuses would add to the Debtors' household income.

Nevertheless, it is apparent that such bonuses have the potential to provide a significant boost to the Debtors' income. In 2009, for example, Mr. Jacob received a year-end bonus of $25,000.00, equating to more than $2,000.00 per month. Thus, even after accounting for taxes, and possibly smaller bonuses in the future, it does not seem unreasonable to assume that the Debtors' net household income will be improved by $500.00 to $1,000.00 per month on account of future year-end bonuses received by Mr. Jacob.

Cumulatively, the effect of all these considerations more than adequately establishes a *prima facie* case that the Debtors' case should be dismissed. Alone, Mr. Jacob's year-end bonuses have the potential to pay 25% to 50% of the Debtors' unsecured debt through a Chapter 13 plan of reorganization. The burden, thus, becomes the Debtors to show why they are entitled to remain in a Chapter 7 case.

In opposition to the dismissal of their Chapter 7 case, the Debtors directly address the reasonableness of their housing expense. As well, the Debtors raise some peripheral points regarding

Page 10

In re: Michael/Tracey Jacob
Case No. 09-36028

their financial situation which they contend mitigate in favor of allowing them to continue in their Chapter 7 case. Of particular importance, the Debtors point out that the UST's assessment of their financial condition does not adequately account for these important financial considerations: (1) the age of their automobiles; (2) the necessity that Mrs. Jacob incur educational expenses as a condition of her employment; and (3) the medical needs of one of their children who requires extensive dental work. The Debtors also seek to shift some of the responsibility of their bankruptcy filing onto their creditors, noting that their "financial downfall" was precipitated when many of their credit-card servicers raised the applicable rate of interest on their accounts. (Doc. No. 17, at pg. 5).

On the matter of the Debtors' residence, this Court has not viewed favorably debtors who seek to maintain expensive homes or vehicles while simultaneously seeking to discharge their voluntarily incurred unsecured obligations. As previously noted by the Court, bankruptcy is "meant to provide a debtor a fresh-start, but not a head start. Thus, when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support of the debtor and his family." *In re Wadsworth*, 383 B.R. 330 (Bankr. N.D.Ohio 2007) (internal citations omitted).

Despite this, the Debtors take the position that allocating in their budget almost four times the amount allowed under the 'means test' formula of § 707(b)(2), is not a luxury, but rather a necessity given the special educational needs of their children. In the Debtors' words:

> The Debtors live in this home to maintain the educational support for their children, . . . . Two of the three children have special educational needs. The public school in this school district has a reputation, state-wide, for excellence and offers special education opportunities that benefit all three children . . . . It is the school district's ability to meet the Debtors' child's educational needs that predicated the move to this neighborhood.

(Doc. No. 17, pg 3-4).

Page 11

In re: Michael/Tracey Jacob
Case No. 09-36028

It is axiomatic that debtors will be permitted some leeway when it comes to how they allocate their financial resources for the health and welfare of their children. Yet, a debtor's discretion is not without its limits. *In re Walker*, 383 B.R. 830, 838 (Bankr. N.D.Ga. 2008). "Generally, parents owe no duty to their children to provide them with nonessential luxuries while the debtors' unsecured creditors receive no payment on their just claims." *In re Griffieth*, 209 B.R. 823, 828 (Bankr. N.D.N.Y. 1996).

On whole, therefore, debtors who seek to allocate, in the name of their children, what otherwise appears to be an excessive expenditure must produce corroborating evidence that there does not exist any reasonable alternative. The Debtors have not done this in this case. No evidence, beyond the Debtors' bare statements, exists that other public schools in the area do not offer comparable services required by the Debtors' children. The Debtors also did not offer any evidence to corroborate that, within their school district, less expensive, but adequate, housing is not available. To the contrary, prior to moving into their home in 1994, the Debtors resided in the same school district, but in a residence which was presumably less expensive.

The Court also does not take lightly the fact that when the Debtors purchased their home in 2004, they were already deeply in credit-card debt. To be sure, the Debtors' bankruptcy filing, as they point out, was largely precipitated by the rates on their credit cards being raised. However, this hardly seems to be a mitigating factor. The rates on the Debtors' credit cards were raised in direct response to the increasing high level of debt the Debtors were carrying on their accounts. And especially given their professional occupations, the Debtors, by continuing to accumulate significant debt after the purchase of their home, could not have been blind to the possibility that their continued accumulation of debt would have negative consequences.

On the other peripheral points raised by the Debtors, the Court agrees that continued strains will be placed on their household budget considering the age of their automobiles, together with the need

Page 12

In re: Michael/Tracey Jacob
Case No. 09-36028

of Mrs. Jacob to incur educational expenses as a condition of her employment and the medical/dental needs of their child. However, such strains are ameliorated in a number of ways.

If Mr. Jacob were to discontinue his 401(k) allotments, a substantial amount of income could be freed up immediately. Additional income could also be made available if the Debtors were to economize on their phone service. Over the longer haul, finding more inexpensive housing would remove what can be viewed as an albatross hanging around the Debtors' necks.

Once made, such adjustments would easily compensate for any future increase in their transportation expenses as well as the expense to be incurred by Mrs. Jacob to further her education. Such adjustments could also address the medical/dental needs of their child, especially considering that the Debtors' present monthly budget already allocates almost $300.00 for medical and dental expenses. Moreover, to the extent that shortfalls would continue to occur in the Debtors' monthly budget, a Chapter 13 plan of reorganization is sufficiently malleable to take into account a change in circumstances. *In re Blankenship*, 398 B.R. 457 (Bankr. N.D.Ohio 2008).

What is more, these adjustments do not even touch the funds that could become available from tax overpayments made by the Debtors, together with any year-end bonuses received by Mr. Jacob, which together could form the core of a Chapter 13 plan of reorganization. As such, while the Court is sympathetic to the strain placed on their household budget, the Debtors, unlike other individuals who appear before the Court, have financial options available which would afford them the ability to make a meaningful repayment of their unsecured debt. This is particularly true considering that the Debtors are young, well educated, from all appearances in good health and have stable employment.

In conclusion, the Court, although it can appreciate the Debtors' desire to retain their home, is not convinced that servicing the full amount of the expenses associated with their property qualifies as a necessary expenditure that should be borne by their unsecured creditors. Also, the Debtors' budget,

Page 13

In re: Michael/Tracey Jacob
Case No. 09-36028

both through the reallocation of their income and by economizing on some expenditures, has sufficient room for maneuver so as to make it feasible for the Debtors to pay at least a portion of their unsecured debt. Consequently, for these reasons, and for those other reasons set forth herein, it is the decision of this Court that granting the Debtors relief in this bankruptcy case would constitute an abuse within the meaning of 11 U.S.C. § 707(b)(1) and § 707(b)(3).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, April 5, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: March 19, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 14

# CERTIFICATE OF SERVICE

Copies were mailed this 19th day of March, 2010 to:

Michael D. Jacob
4130 Brookside Rd
Toledo, OH 43606

Tracey L Jacob
4130 Brookside Rd
Toledo, OH 43606

Deborah K Spychalski
PO Box 711
Toledo, OH 43697

Dean Wyman
201 Superior Aveneue, #441
Cleveland, Oh 44114

Linda Maria Battisti
201 Superior Ave, #441
Cleveland, OH 44114

Louis J Yoppolo
300 Madison Ave, #1200
Toledo, OH 43604

           /s/Diana Hernandez
          Deputy Clerk, U.S. Bankruptcy Court